UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT



| | |
|---|---|
| ALICJA NIVER, | Civil No. 3:02CV1786 (JCH) |
| Petitioner, | |
| v. | |
| IMMIGRATION AND NATURALIZATION SERVICE, | |
| Respondent. | December 30, 2003 |

### PETITIONER'S 2d REPLY TO THE GOVERNMENT'S RESPONSE TO THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS

NOW comes the petitioner, ALICJA NIVER, by and through her attorney, David J. Wenc, and replies to the Government's Response dated November 21, 2003, as follows:

#### Jurisdiction & Exhaustion

The Government states:

> Although the petitioner appealed the IJ's order of removal to the Board of Immigration Appeals on grounds asserted in her original petition, she did not raise with the BIA the claims raised in her amended petition. Accordingly, this Court lacks jurisdiction to review the unexhausted claims.
>
> (Govt. Resp. pgs. 4-5)

The petitioner stands by her argument that this Court has jurisdiction to review the Immigration Judge's order of removal to determine whether the continued custody of Ms. Niver is in violation of the Constitution or laws or treaties of the United States. *See 28 USC Sec. 2241 (c) (3); and Maria v. McElroy*, 68

*F. Supp. 2d 206, 215 (E.D.N.Y. 1999)*. In addition, this Court has jurisdiction over Ms. Niver's section 2241 habeas claim because the 8 U.S.C. Sec. 1252 (d) exhaustion requirement does not apply to a habeas petition. *See, e.g. Jankowski v. INS, 138 F. Supp. 2d 269, 275 (D. Conn. 2001), rev'd on other grounds, Jankowski-Burczyk v. INS, 291 F. 3d 172 (2d Cir. 2002)*.

In the Amended Petition, Ms. Niver claimed (1) that she was not subject to removal because she was a "national" of the United States, (2) that the removal order violated various treaties, and (3) that the 1999 state convictions on which her removal was based, were invalid.

The Government argued in its response: "[I] n sum, because petitioner failed to raise the claims in her amended habeas petition with the administrative agency, as statutorily required, she has waived review of them in this habeas proceeding". *See, Govt. Resp. pg. 11*. In addition, the Government argued that no exceptions to the statutory exhaustion requirement applied. In particular, the Government argued, "the BIA has the institutional authority to decide Niver's claim that she is a 'national' of the United States." *See, Govt. Resp. pg. 12*. Moreover, "the BIA further could have considered whether it had jurisdiction to determine whether petitioner's international law claims could provide relief from removal apart from any relief provided for in the INA." *See, Govt. Resp. pg. 13*. In

sum, according to the Government, this Court could not dispense with the exhaustion requirements.

Despite the Government's argument, "exhaustion requirements are satisfied when the agency has in fact ruled on the issue." *See, Maria v. McElroy, 68 F. Supp. 2d at 216 (whether or not the issue was technically before the BIA, the BIA addressed it thoroughly enough).* The INS alleged that Niver was not a citizen or a national of the United States. Instead, it alleged that Niver was a native and citizen of Poland. *See, INS Notice to Appear, dated February 5, 2001.* On April 29, 2002, an Immigration Judge ordered Niver removed from the United States to Poland on the basis of the charges contained in the Notice to Appear. *See, Order of Immigration Judge, dated April 29, 2002.* Because the INS and the immigration judge addressed the issue of whether Ms. Niver was a "national" of the United States, it does not matter whether Ms. Niver raised the issue. *See, Maria v. McElroy, 68 F. Supp. 2d at pg. 218.* Ms. Niver was a pro se litigant. The issues Ms. Niver presented at the IJ hearing and in her BIA appeal were sufficient to present the claim in her amended habeas petition that she was a "national" of the United States. A "national" cannot be removed on the basis of an "aggravated felony". *See, INA sec. 237 (a)(2)(A)(iii); and Lee v. Ashcroft, 216 F. Supp. 2d 51 (E.D.N.Y. 2002).* Since the IJ and the BIA ruled that Ms. Niver was removable on the basis

of an "aggravated felony", both entities *necessarily* had to conclude that Ms. Niver was not a citizen or national of the United States. Therefore, exhaustion was satisfied because both the IJ and the BIA addressed the "national" issue sufficiently to vindicate policy concerns underlying the exhaustion doctrine.

Ms. Niver's international law claims raise questions of law. "[P]urely legal statutory and constitutional claims are within 28 U.S.C. 2241's scope." *See, Calcano-Martinez v. INS, 232 F.3d 328, at 342 (2d Cir. 2000)* and *St. Cyr v. INS, 229 F.3d 406, at 410 (2d Cir. 2000)*. Ms. Niver does *not* ask this Court to determine whether the IJ or the BIA exercised his/its discretion appropriately. Rather, Ms. Niver's claim is a purely legal question that is cognizable under the habeas statute, namely whether, as a matter of law, the petitioner is in custody in violation of the treaties of the United States under 28 USC Sec. 2241 (c)(3), e.g. the International Covenant on Civil Rights and Political Rights (ICCPR), the Universal Declaration of Human Rights (UDHR), and the Convention on the Rights of Children (CRC).

Moreover, an exception exists to the exhaustion requirements cited by the Government: (1) where an administrative appeal would be futile or (2) where a petitioner raises a constitutional claim. *See, Jankowski v. INS, Id.* at 273.

In the instant case, an administrative appeal would be futile because INA Sec. 240A (a) and (b), 8 USC Sec. 1229b (a) and (b) completely bars a non-citizen convicted of an aggravated felony from eligibility for "cancellation of removal" relief. Furthermore, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) bars INA Sec. 212 (c), 8 USC Sec. 1182 (c) relief (Waiver of Deportation) for aggravated felonies while INA 212 (h), 8 USC Sec. 1182 (h) relief (Waiver of Inadmissibility) is unavailable for a person who has been convicted of an aggravated felony after being admitted as a permanent resident. The IJ's statement that Ms. Niver made no application for relief from removal was disingenuous because as of April 29, 2002, the INS did not recognize any form of relief for a person in Niver's situation. An administrative appeal for relief from removal based upon the principles of "cancellation" or "waiver" would prove futile.

### Niver is a "National" of the United States

The Government argues that the "mere filing of a naturalization application does not transform Niver from an alien to a "National" of the United States." *See, Govt. Resp. p. 14).* Despite the Government's argument, "an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself".

*See, Lee v. Ashcroft*, 216 F. Supp.2d 51 (E.D.N.Y. 2002) **quoting** *United States v. Morin*, 80 F.2d 124, 126 (4th Cir. 1996).

Niver was born on January 11, 1959 in Wroclaw, Poland.

Her parents reside in Venice, Florida. Her father, Roger Nizinski, is a naturalized citizen of the United States. Her mother, Teresa Nizinski, is a permanent resident of the United States.

Niver has one sister and two brothers. Her sister, Elzbieta Dmowski, resides in Torrington, Connecticut and is a United States citizen. Her brother, Sylwester Nizinski, resides in Torrington, Connecticut and is a United States citizen. Her other brother, Kraysztof Nizinski, resides in Torrington, Connecticut and is a United States citizen.

Niver has two nieces and a nephew. Her niece, Teresa Dmowski (21 years old), resides in Torrington, Connecticut and is a United States citizen. Her niece, Izabela Nizinski (19 years old), resides in Torrington, Connecticut and is a United States citizen. Her nephew, Mark Nizinski (18 years old), resides in Torrington, Connecticut and is a United States citizen.

On or about July 10, 1979, Niver was admitted to the United States at New York, New York as a visitor. On February 10, 1980, the petitioner married Paul Szymanski of Torrington, Connecticut. However, on or about August 20, 1980, the

petitioner divorced Mr. Szymanski. Effective April 16, 1980, the INS adjusted Niver's status to that of a Lawful Permanent Resident.

On May 1, 1982, the petitioner married Ernest Niver, a citizen of the United States. The petitioner's husband resides in Torrington, Connecticut. The couple remains married.

From September 1983 through May 1985, Ms. Niver was a student. From May 1985 through March 1986, Ms. Niver worked as a bank teller with Connecticut National Bank. From March 1986 through March 1987, Ms. Niver worked as a bank teller with Northwest Bank for Savings. During March 1987, Ms. Niver became employed as a waitress at Applebee's Restaurant. During 1994 and 1995, Ms. Niver held positions with Commercial Sewing, the Donut Station and Kmart, all located in Torrington, Connecticut.

Niver applied for United States citizenship two times after July 10, 1979 (the date she was admitted to the United States). On June 13, 1988, Ms. Niver petitioned for naturalization with INS in Hartford, Connecticut. Questions 27 through 29 pertained to "allegiance" to the United States. The petitioner answered each question in the affirmative. On or about October 2, 1989, Ms. Niver applied for transfer of her petition to Florida because she had moved to Venice, Florida. Ms. Niver remained in Florida from 1989 through 1994. Thereafter, she returned to Torrington, Connecticut.

On August 17, 1998, Ms. Niver applied for naturalization again with the INS. The application was received in the St. Albans, Vermont office of the INS. Part 8 of the application for naturalization contained a section regarding "Allegiance to the United States". Ms. Niver answered "yes" to each question requiring allegiance to the United States.

On or about October 4, 1999, Niver was convicted in the Superior Court for the Judicial District of Litchfield of Robbery in the Third Degree in violation of C.G.S., Sec. 53a-136 and Larceny in the Third Degree in violation of C.G.S., Sec. 53a-124.

On December 3, 1999, Niver was sentenced on the Robbery 3d count to a term of 5 years execution suspended after 3 years with 5 years probation. On the Larceny 3d count, Niver was sentenced to a term of 5 years execution suspended running consecutive to the Robbery 3d count.

Niver completed the service of her state sentence of imprisonment during June 2002. She continues to serve her state sentence of probation.

Niver has satisfied the requirements to be considered a "national" of the United States. She applied for citizenship twice. This evidence together with her residency in the United States, her 20-year marriage to an American citizen, the immigration status of her parents and siblings as well as other

facts, including her employment record, demonstrate Niver's allegiance and confer the status of "national" on the petitioner.

## Principles of Customary International Law

The Government argues that Ms. Niver's international law claims are not reviewable and are without merit. *See, Govt. Resp. pg. 21.* According to the Government, the ICCPR is not self-executing. The UDHR is not a treaty. The United States is not a party to the CRC, which does not have the force of domestic law.

Despite the Government's arguments, *Beharry v. Reno, 183 F. Supp. 2d 584 (EDNY 2002), rev'd on other grounds, Beharry v. Ashcroft, 329 F.3d 56 (2d Cir. 2003)* held that principles of customary international law, as demonstrated by the ICCPR, UDHR and the CRC, require that a non-citizen like Don Beharry be given the opportunity to present reasons why they should not be deported to an Immigration Judge, rather than be subject to automatic banishment upon conviction of an aggravated felony offense. According to the *Beharry* court, international customary law requires that US officials determine whether deportation of a parent would be in the "best interests" of the child. The least restrictive means to bring the INA into compliance with this customary international law is to extend

INA Sec. 212 (h), 8 USC Sec. 1182 (h) relief to all eligible aggravated felons subject to removal, with the possible exception of those convicted of murder, torture, or who are security threats to the United States.

In the instant case, the Government seeks to restrict the reach of *Beharry* to petitioners who committed their crimes before Congress amended the definition of "aggravated felony" in 1996, but were convicted after the amendment. *See, Govt. Resp. pg. 26.* The *Beharry* court reasoned that such a limitation would fulfill "the goal of bringing that statute into compliance with international law, while doing so in the least intrusive way possible." *See, Beharry v. Reno, supra at pg. 605.*

Notwithstanding the *Beharry* court's reasoning, this Court should consider expanding the reach of *Beharry* to petitioners, such as Niver, in order to truly fulfill the goal of bringing the INA into compliance with international law by entitling Ms. Niver to a hearing for section 212 (h) relief.

### Post-Conviction Relief

The Government argues that Ms. Niver cannot challenge her state convictions in this federal habeas proceeding and that state court habeas proceedings do not change the finality of the convictions for removal purposes. *See, Govt. Resp. pgs. 29-30.*

The Government's later position ignores the long-standing rule that a conviction vacated in criminal court as **legally invalid** on some ground has also been eliminated as a source of adverse immigration consequences. *See, Wiedersperg v. INS, 896 F.2d 1179 (9th Cir. 1990) (post-conviction writ vacating a criminal conviction entitled the non-citizen to reopen the deportation proceeding even after he had been deported).*

In the instant case, Ms. Niver has filed a habeas corpus claim in state court. The case is entitled, *Niver v. Warden, Rockville Superior Court,* and Docket No. CV030004241. The grounds for vacating Ms. Niver's guilty plea include the court's failure to secure a voluntary, knowing and intelligent waiver of the fundamental constitutional rights waived by a plea of guilty as well as ineffective assistance of counsel. Should Ms. Niver vacate her state convictions for robbery and larceny as legally invalid, then she would move to reopen the INS' removal proceedings.

### The Order Staying Removal Should Remain in Effect

Ms. Niver reasserts her grounds to stay removal, which were contained in her February 28, 2003 motion and memorandum. There is a strong possibility that Ms. Niver will succeed on the merits of one or more of her claims and that she and her family

will be irreparably harmed by removal before her rights are litigated in both state and federal court.

## Conclusion

In conclusion, this Court should grant the petitioner's amended petition for writ of habeas corpus or, alternatively, continue the Order staying petitioner's removal until her state post-conviction claims are final.

                                        RESPECTFULLY SUBMITTED,
                                        PETITIONER, ALICJA NIVER,

BY: _____
     David J. Wenc, Her Attorney
     Wenc Law Offices
     44 Main Street
     P.O. Box 306
     Windsor Locks, CT 06096
     Tel. (860) 623-1195
     FED BAR # CT00089

## CERTIFICATION

    I hereby certify that on December 30, 2003 I served a copy of the foregoing Reply by mailing same via U.S. mail, first-class, postage prepaid, to:

Chambers of the Honorable Janet C. Hall
United States District Court
915 Lafayette Blvd.
Bridgeport, CT  06604

Assistant United States Attorney Lisa E. Perkins
Office of the United States Attorney
450 Main Street
Hartford, CT 06103

_____
David J. Wenc, Esquire