UNITED STATES DISTRICT COURT **FILED**
FOR THE DISTRICT OF CONNECTICUT

ALICJA NIVER,                                      Civil No. 3:02CV1786 (JCH)

                    Petitioner,                    2004 MAR 12 A II: 46

v.                                                 U.S. DISTRICT COURT
                                                   BRIDGEPORT, CONN

IMMIGRATION AND NATURALIZATION
SERVICE,

                    Respondent.                    March 11, 2004

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

NOW comes the petitioner, ALICJA NIVER, by and through her
attorney, David J. Wenc, and hereby submits a supplemental
memorandum in support of her amended petition for a writ of
habeas corpus pursuant to this court's instructions at the
February 24, 2004 hearing.

## JURISDICTION

This court expressed concern that it lacked jurisdiction to
determine Niver's "nationality" claim on the merits without
reference to 8 U.S.C. 1252 (b) (5). Two district courts have
made this determination without reference to Sec. 1252 (b) (5).
See, *Lee v. Ashcroft*, 216 F.Supp.2d 51, 56-59 (E.D.N.Y. 2002)
and *Shittu v. Elwood*, 204 F.Supp.2d 876, 878-81 (E.D. Pa. 2002).
Notwithstanding *Lee* and *Shittu*, this court can transfer Niver's
"nationality" claim to the court of appeals pursuant to 28

Page 1 of 6

U.S.C. 1631 "in the interest of justice" should it find "that there is a want of jurisdiction".

During the February 24, 2004 hearing, petitioner's counsel stated that Niver's collateral attack on her state convictions under Sec. 2241 was probably "premature". However, upon further reflection and research, it does not appear that the 2d Circuit or the district courts in Connecticut have faced this issue when applied to facts similar to those found in this case. *See, Broomes v. Ashcroft*, 02-6419 (10th Cir. 2004), Nos. 02-6419 & 03-1063; *Drakes v. I.N.S.*, 330 F.3d 600, 605-06 (3d. Cir.), cert denied, 124 S.Ct. 541 (2003); *Contreras v. Schiltgen*, 151 F.3d 906, 907-08 (9th Cir. 1998); *Neyor v. I.N.S.*, 155 F.Supp.2d 127, 138-39 (D.N.J. 2001).

Sec. 2241 should serve as a vehicle for this court to review the validity of Niver's state court convictions when those convictions serve as the sole predicates for the DHS (formerly INS) detention and removal orders.

Another issue the court wanted addressed was whether it had jurisdiction to determine jurisdictional facts. At least one case has answered this question in the affirmative; e.g. *Salim v. Ashcroft*, 350 F.3d 307 (3rd Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on a claim of ineffective assistance of counsel during plea-bargaining, the client must show (a) that defense counsel did not investigate the exact immigration consequences that would flow from the conviction, (b) that counsel did not advise the client of those consequences, and (c) that the client did not enter the plea knowingly and intelligently. Further, prejudice must be shown in that the client would not have entered the guilty plea if she had been properly informed. See, *Downs-Morgan v. U.S.,* 765 F.2d 1534, 1538 (11th Cir. 1985), citing Wofford v. Wainright, 748 F.2d 1505, 1508 (11th Cir. 1984)(per curiam); *People v. Soriano,* 194 Cal. App. 3d 1470 (1987)(in order to render effective assistance of counsel, defense counsel must investigate the particular immigration consequences to the defendant of a plea bargain and advise the client of those consequences prior to entry of the plea); *In re Resendiz,* 25 Cal.4th 230 (2001)(misadvice from counsel regarding the immigration consequences of a conviction can rise to constitutionally deficient performance); *Janvier v. United States,* 793 F.2d 449 (2d Cir. 1986)(defense counsel must take immigration consequences into account *at sentencing* in order to protect the client if possible against deportation.)

## STANDARDS FOR STAYS OF REMOVAL ORDERS

In *Mohammed v. Reno*, *02-2443, 309 F.3d 95 (2d Cir. 2002)*, the 2nd U.S. Circuit Court of Appeals clarified the standards under which a federal judge may issue a temporary stay of a removal order. The *Mohammed* court held that the heightened standard under INA Sec. 242(f)(2) does not apply to stays pending appeals of denial of an alien's habeas petition. However, the Court went on to vacate the District Court's stay order under traditional injunctive relief analysis where the petitioner had virtually no chance of success on the merits of his claim for 212 (c) relief.

In the case at bar, Niver has demonstrated the possibility of prevailing on her "nationality" claim should this court transfer the claim to the USCA. The government has not disputed one fact establishing Niver's showing that she owes permanent allegiance to the United States. In addition, Niver has demonstrated the possibility of prevailing on her collateral attack of the state court convictions.[1] Niver can show at a state habeas proceeding (a) that her defense counsel did not investigate the exact immigration consequences that would flow from the conviction, (b) that her counsel did not accurately advise her of those consequences, and (c) that she did not enter

---

[1] Petitioner's counsel has attached a copy of the state-level amended habeas petition as well as copies of the underlying trial transcripts. The ineffective assistance of counsel claims require evidence, which is found outside the record of the state court transcripts.

the plea knowingly and intelligently.  Further, Niver would not have entered the guilty plea if she had been properly informed of the immigration consequences.

This court should enter a stay of the DHS's removal order until Niver's collateral attack on her state convictions can be litigated. Should the state court vacate the state convictions on legal or constitutional grounds, then Niver can return to an immigration judge to reopen removal proceedings because immigration authorities will respect the vacatur. *See, Matter of Rodriquez-Ruiz*, 22 I&N Dec. 1378 (BIA 2000).

Respectfully Submitted,
PETITIONER, ALICJA NIVER,


BY: _____
David J. Wenc, Her Attorney
Wenc Law Offices
44 Main Street
P.O. Box 306
Windsor Locks, CT 06096
Tel. (860) 623-1195
FED BAR # CT00089

## CERTIFICATION

I hereby certify that on March 11, 2004 I served a copy of the foregoing Supplemental Memorandum by U.S. mail, first-class postage prepaid, to:

Chambers of the Honorable Janet C. Hall
United States District Court
915 Lafayette Boulevard
Bridgeport, CT  06604

Assistant United States Attorney Lisa E. Perkins
Office of the United States Attorney
450 Main Street
Hartford, CT 06103

David J. Wenc, Esquire

STATE OF CONNECTICUT

DKT. NO. CV-03-0004241-S (1AC) :    SUPERIOR COURT

ALICJA NIVER,                      :    JUDICIAL DISTRICT OF TOLLAND

       Petitioner,

vs.                               :    AT ROCKVILLE

COMMISSIONER OF CORRECTION
THERESA C. LANTZ,

       Respondent.         :    MARCH 01, 2004

## AMENDED PETITION FOR HABEAS CORPUS

*To the Superior Court in and for the judicial district of Tolland at Rockville now in session comes ALICJA NIVER of CCI-York in Niantic, Connecticut praying a writ of habeas corpus and complains and says:*

1. ALICJA NIVER, Petitioner, herein after referred to as "Niver", is confined at CCI - York in Niantic, Connecticut by Theresa C. Lantz, the Commissioner of Correction. On December 3, 1999, Niver was sentenced on one count of Robbery in the Third Degree in violation of C.G.S., Sec. 53a-136 to a prison term of 5 years execution suspended after 3 years with 5 years probation. {See Docket No. CR 99 98546 at the Litchfield Superior Court}.  On the same day, Niver was sentenced on one count of Larceny in the Third Degree in violation of C.G.S., Sec. 53a-124 to a prison term of 5 years execution suspended but running consecutive to the Robbery 3d count. {See, Docket No. CR

99 98546 at the Litchfield Superior Court). Niver completed the service of her State sentence of imprisonment during June, 2002. However, Niver continues to serve out her State sentence of probation. As a collateral consequence of her State convictions, Niver remains detained at the York Correctional Institution in Niantic, Connecticut as an INS detainee subject to removal.

2.    Her   imprisonment   together   with   the   collateral consequences of the convictions are illegal in that:

A.    Niver's convictions were invalid because she was not advised of her right to consult with her consular officer upon arrest and charge in State court in violation of the Vienna Convention on Consular Relations (VCCR).

B.    Niver's convictions were invalid because Niver's guilty plea was made in ignorance (1) of her right to consult with her consular officer in violation of the Vienna Convention on Consular Relations (VCCR), and (2) of the adverse immigration consequences. As a result, Niver's guilty plea was not knowing, voluntary and intelligent.

C.    Niver's convictions were invalid because Niver's defense counsel was ineffective during plea-bargaining in that (1) defense counsel did not investigate the exact immigration consequences that

*Page 2 of 4*

would flow from the convictions, (2) that counsel did not advise the client of those consequences, and (3) that the client did not enter the plea knowingly and intelligently. Further, the client would not have entered the plea if she had been properly informed.

D.     Niver's convictions were invalid because Niver's defense counsel (1) failed to accurately advise Niver about the immigration consequences of her plea, and (2) failed to handle the case so as to minimize the adverse immigration consequences of her plea. Further, Niver would not have entered the plea if she had been properly advised.

E.     Niver's convictions were invalid because Niver's defense counsel was ineffective in failing to present and to confer adequately with the petitioner about presenting a motion to suppress her "confession" on the grounds the arresting officers violated her rights under the VCCR.

WHEREFORE, the petitioner prays that a writ of habeas corpus be issued to bring her before the Court that justice may be done and that she be granted such relief as she may be entitled to in this proceeding.

*Page 3 of 4*

Dated at Windsor Locks, Connecticut, this 1st day of March 2004.

RESPECTFULLY SUBMITTED,
PETITIONER, ALICJA NIVER,

BY: _____
David J. Wenc, Her Attorney
WENC LAW OFFICES
44 Main Street
P.O. Box 306
Windsor Locks, CT 06096
Tel. (860) 623-1195
Juris #67314

## CERTIFICATION

I hereby certify that I served a copy of the foregoing document this 1st day of March, 2004, by U.S. Mail, first-class postage prepaid, to:

Assistant State's Attorney Dawn Gallo
Office of the State's Attorney
P.O. Box 667
Bantam, CT 06750

Assistant Attorney General Madeline A. Melchionne
Office of the State Attorney General - Public Safety
110 Sherman Street
Hartford, CT  06105

_____
David J. Wenc, Esq.

| | |
|---|---|
| CR99-0098546S | : SUPERIOR COURT |
| STATE OF CONNECTICUT | : JUDICIAL DISTRICT |
| V. | : LITCHFIELD, CONNECTICUT |
| ALICJA NIVER | : JUNE 7, 1999 |

---

**\*\*Advisement of Rights\*\***

B E F O R E:

**THE HONORABLE PETER E. WIESE, JUDGE**

A P P E A R A N C E S:

    REPRESENTING THE STATE:
        Attorney James Fletcher

Gennie Henderson
Court Recording Monitor

Transcribed by:
Marlene F. Matteau
Court Recording Monitor
Litchfield Superior Court
15 West Street
Litchfield, CT  06759

1          THE COURT:  Following is your advisement of

2     rights:

3          You have the right to remain silent

4     concerning the charges against you.  Any statement

5     you give in court can and will be used against you.

6          You have the right not to discuss your case

7     with any person including you do not have to discuss

8     your case with a police officer.  If you choose to

9     discuss your case, you have the right to have an

10    attorney present while answering any questions.  You

11    have the right to stop answering questions anytime

12    that you might choose to do so.

13         You have the right to a public and speedy

14    trial.

15         If you are 16 or 17 years old you must be

16    accompanied by a parent or legal guardian.  If you

17    are 16 or 17 years old you may qualify for treatment

18    as a youthful offender.  You must file such an

19    application in writing with the clerk of the court.

20         If you are not a citizen of the United States

21    you are hereby advised that a conviction for the

22    offense of which you have been charged my result in

23    deportation, exclusion from admission to the United

24    States, or denial of naturalization pursuant to the

25    laws of the United States.

26         Thank you.  Those are your rights.

27         MR. FLETCHER:  Good morning, your Honor.

2

1              May the record reflect that the Spanish

2       interpreter was present, Ms. Charleton, who read the

3       -- repeated the rights in Spanish.

4                          (Excerpt concluded)

STATE OF CONNECTICUT

V.

ALICJA NIVER

## C E R T I F I C A T I O N

I, Marlene F. Matteau, Court Recording Monitor in and for the State of Connecticut, certify that the foregoing is a true and accurate transcript of the electronic recordings, with reference to the above-entitled matter, heard before The Honorable Peter E. Wiese, Judge at the Bantam Superior Court, Judicial District of Litchfield, at Bantam on June 7, 1999.

Dated at Litchfield, Connecticut, on this 29th day of December 2003.

*Marlene F. Matteau*

Marlene F. Matteau

Court Recording Monitor

| CR99-0098546S | : SUPERIOR COURT |
|---|---|
| STATE OF CONNECTICUT | : JUDICIAL DISTRICT |
| V. | : LITCHFIELD, CONNECTICUT |
| ALICJA NIVER | : JUNE 7, 1999 |

B E F O R E:

### THE HONORABLE PETER E. WIESE, JUDGE

A P P E A R A N C E S:

    REPRESENTING THE STATE:
        Attorney Andrew Wittstein

    REPRESENTING THE DEFENDANT:
        Attorney Carol Goldberg

Gennie Henderson
Court Recording Monitor

Transcribed by:
Marlene F. Matteau
Court Recording Monitor
Litchfield Superior Court
15 West Street
Litchfield, CT  06759

1

1    MR. WITTSTEIN:  State versus Alicja Niver.

2    MS. GOLDBERG:  Is this going to Part A?

3    MR. WITTSTEIN:  Yes.

4    Your Honor, in lieu of signing a -- well,

5    I'll wait until Ms. Niver comes out.

6    (Pause in proceedings.)

7    Your Honor, Ms. Niver was arrested on a

8    warrant -- withdrawn -- was arrested without a

9    warrant and charged with larceny in the first

10    degree.

11    The police brought me a warrant this morning

12    for additional charges arising out of the same

13    incident:  two counts of robbery in the second; one

14    count of larceny six; one count of threatening; one

15    count of breach of the peace; one count of reckless

16    endangerment first; one count of reckless driving.

17    I'm adding those charges this afternoon by

18    filing a substituted information adding them.  I've

19    tendered a police report and a warrant affidavit

20    sufficient, I believe, to show probable cause for

21    the charges.  I'd ask your Honor to so find.

22    THE COURT:  So that would be for larceny one,

23    robbery --

24    MR. WITTSTEIN:  Larceny one is from the

25    police report alone, and these are the rest of the

26    charges.

27    THE COURT:  Okay.

2

1     Ms. Niver, did you hear and understand your

2     rights as I read them to you earlier today?

3          THE DEFENDANT:  I'm --

4          THE COURT:  Did you hear and understand your

5     rights as I read them to you earlier today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And would Ms. Niver qualify for

8     the services of the public defender?

9          MS. GOLDBERG:  She does, your Honor.

10          THE COURT:  Thank you.  PD's appointed.

11          (Off record comments between Attorney

12     Goldberg and the defendant.)

13          THE COURT:  Thank you.  Probable cause is

14     found for larceny one, robbery second, larceny six,

15     threatening, reckless endangerment.

16          Madam Bail Commissioner.

17          BAIL COMMISSIONER:  Your Honor, the defendant

18     is 40 years old.  She's lived five years in

19     Connecticut, currently residing in Farmington.

20     She's on Social Security disability.  I don't know

21     if she can post any type of bond at this time.

22          She has prior convictions in Connecticut for

23     cases that were disposed 9/17/97, issuing a bad

24     check.  There were four counts.  She received 90

25     days in jail concurrent.

26          She also has a conviction in '96 for

27     possession of narcotics.  She received three years

3

1    suspended after six months to serve, two years

2    probation.  Probation was revoked.  She did a year -

3    - one year incarcerated.

4            She also has a lovely record from Florida,

5    various arrests.  The most notable that I could pick

6    out was possession of drugs, and she had probation

7    for one year and the probation was violated.

8            She was held on a $75,000 bond.  That would

9    be my recommendation, your Honor.

10           THE COURT:  Is there just one docket number

11   assigned for all these cases?

12           MR. WITTSTEIN:  Yes.

13           THE COURT:  Thank you.

14           State.

15           MR. WITTSTEIN:  Acceptable, your Honor.

16           THE COURT:  Ms. Goldberg.

17           MS. GOLDBERG:  Your Honor, what the Bail

18   Commissioner says is the information I have also.

19   However, what I'd like to point out to the Court is

20   that in her record, either here or in Florida, there

21   are no failures to appear.  This is a woman who has

22   indicated that she understands the responsibility of

23   coming to Court and has indicated that she would in

24   fact come to court.

25           I think the reason it's significant that she

26   be allowed to be released on a monetary bond is

27   this:  She is under psychiatrist care and she

**4**

desperately is in need of that care.  She's taking
a whole host of medications, so much so that -- I
mean, they have to be given every single day.  One
was just given to her recently.  The sheriffs were
kind enough to do that.

She takes medication for anxiety, depression,
suicide ideation, Crohn's disease, Parkinson's
Disease, and some tumors.  I mean, she hasn't had an
easy time or an easy life.  I don't know that she
will be able to get all of this medication and
treatment while she is in jail.  She is disabled.
She is, from what I understand, been declared
disabled and does receive Social Security benefits.

Your Honor, for those reasons we would ask
the Court to release her on a very small monetary
bond.

THE COURT:  Thank you.  I don't believe that
to be appropriate.  Bond will be set in the amount
of $75,000 cash or professional surety.

What, if anything, would you like noted on
the mittimus?

MS. GOLDBERG:  The following, please:  That
she is currently taking Klonopin.

THE CLERK:  Can you spell that, please?

MS. GOLDBERG:  C-L-O-N --

MR. WITTSTEIN:  It's K.

MS. GOLDBERG:  Or K-L-O-N-O-P-I-N.  She takes

5

1   2 milligrams three times a day and she needs her

2   third pill when she gets to the jail.

3        She does have medications with her.  Whether

4   or not the jail will allow them to come in, I'm not

5   sure.

6        She informs me she takes a drug called

7   "effexor".  I have --

8        THE DEFENDANT:  That's an anti-depressor.

9        MR. WITTSTEIN:  E-F-F-E-X-O-R, effexor.

10       MS. GOLDBERG:  E-F-F --

11       MR. WITTSTEIN:  E-X-O-R.

12       THE DEFENDANT:  37.5 milligrams twice a day.

13       MS. GOLDBERG:  Did you hear that?  Did you

14   hear that?

15       37.5 milligrams twice a day.

16       THE DEFENDANT:  And cyproxite (phonetic) once

17   a day, 7.5 milligram.

18       THE CLERK:  What was the last one?

19       THE DEFENDANT:  Cyproxite.

20       MR. WITTSTEIN:  I'm not sure about how to

21   spell that one.

22       THE COURT:  You're going to tell them all

23   this when you get to the jail, aren't you?

24       THE DEFENDANT:  Your Honor --

25       THE COURT:  Just -- just answer my question.

26   Are you going to tell them all -- about all of the

27   medications you take?

6

1      THE DEFENDANT:  Yeah, but who I going to

2   tell it to?

3      MS. GOLDBERG:  She also takes decatin

4   (phonetic).

5      THE CLERK:  How do you spell it?  I don't

6   know all these medications.

7      MS. GOLDBERG:  I don't know.  D-E-C-A-T-I-N

8   is my guess.

9      THE DEFENDANT:  I take them twice a day.

10   They call them happy pills.  They're supposed to

11   make me so I won't be so depressed.

12      MS. GOLDBERG:  She takes hydrocortisone.

13      MR. WITTSTEIN:  H-Y-D-R-O --

14      THE DEFENDANT:  100 milligrams every day.

15      MR. WITTSTEIN:  -- C-O-R-T-I-S-O-N-E.

16      THE DEFENDANT:  And hydrocortisone anemia

17   (phonetic), 100 milligrams every day for my Crohn's

18   disease.

19      And I have a -- I just was diagnosed again.

20   I had the one tumor four years ago.  It was removed

21   and now I'm just diagnosed with another tumor.

22      MS. GOLDBERG:  She also take Tylenol with

23   codeine.

24      THE DEFENDANT:  Yeah.  I got tendonitis and a

25   back problem.

26      THE COURT:  What date would you like?

27      THE CLERK:  It's a Part A transfer for June

7

1      22nd.

2          MS. GOLDBERG:  Is there any way it can be

3 earlier than that?  Can it be next week?

4          THE CLERK:  It might be hard but we can send

5 it up if you really need it to.  The 15th?

6          MS. GOLDBERG:  Yes, please.

7          THE CLERK:  I'm just going to cross out that

8 date and initial it because I already wrote it down.

9          MR. WITTSTEIN:  I'd also request, Ms.

10 Goldberg, that you have someone or yourself call

11 Niantic and advise them of what she takes.

12          MS. GOLDBERG:  I am.

13          MR. WITTSTEIN:  The cessation of

14 hydrocortisone suddenly can be very threatening.

15          THE CLERK:  Is there an added charge?

16          THE COURT:  Thank you.

17          THE CLERK:  I didn't receive that.

18          THE DEFENDANT:  Crohn's disease is very

19 threatening.  You can sit on a toilet for 24 hours a

20 day.

21          MR. WITTSTEIN:  Date please.

22          THE CLERK:  June 22nd, Part A.

23          MS. GOLDBERG:  You just indicated June 15th.

24          THE CLERK:  I'm sorry, the 15th.  Sorry.

25          (Matter concluded)

26

27

STATE OF CONNECTICUT

V.

ALICJA NIVER


## C E R T I F I C A T I O N


I, Marlene F. Matteau, Court Recording Monitor in and
for the State of Connecticut, certify that the foregoing is
a true and accurate transcript of the electronic
recordings, from the tapes of Gennie Henderson, with
reference to the above-entitled matter, heard before The
Honorable Peter E. Wiese, Judge at the Bantam Superior
Court, Judicial District of Litchfield, at Bantam on June
7, 1999.

Dated at Litchfield, Connecticut, on this 10th day of
December 2003.


*Marlene F. Matteau*

Marlene F. Matteau

Court Recording Monitor