UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALICJA NIVER, | : |
| Petitioner, | : CIVIL NO. 3:02CV1786(JCH) |
| v. | : |
| IMMIGRATION AND NATURALIZATION SERVICE, | : |
| Respondent. | : MARCH 19, 2004 |

### GOVERNMENT'S SUPPLEMENTAL RESPONSE TO
### AMENDED PETITION FOR WRIT OF HABEAS CORPUS

The respondent, Immigration and Naturalization Service (INS),[1] through its undersigned counsel, hereby submits this supplemental brief as requested by the Court at the hearing in this matter on January 24, 2004.  In particular, the Court asked counsel for the petitioner and the Government respondent to address the following questions raised by the amended petition in this case: (1) does the Court have jurisdiction to decide petitioner's claim that she is a "national" of the United States and therefore not subject to removal? (2) what is the standard applicable to petitioner's request for a stay of removal pending collateral attack of her state conviction on which the removal order is based and is such a stay warranted in this case?; and (3) as it relates to the stay question, what is the viability of petitioner's claim of ineffective assistance of counsel

---

[1] On March 1, 2003, the INS was abolished and its functions were transferred from the Department of Justice into three bureaus within the Department of Homeland Security ("DHS") pursuant to the Homeland Security Act of 2002.  See Pub. L. No. 107-296, 116 Stat. 2135, 2178. The enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("ICE").  Id.

in support of her state habeas petition?  Respondent addresses these issues below.

The Court is very familiar with the factual and procedural history of this case.  Thus, the respondent relies on its previous submissions in this regard.

**I.    Petitioner's Claim She Is A "National" Was Not Administratively Exhausted, Is Not Viable And, In Any Event, Is Not Properly Before This Court.**

As explained in respondent's previous submissions, the petitioner's claim to national status was not exhausted at the administrative level and was therefore waived.  Further the "national" claim is simply not viable.   As previously explained, an alien cannot become a "national" of the United States simply by filing a naturalization application even if the application includes an oath of allegiance to the United States.  This principle is well-supported by statutory and case law, including case law from Second Circuit. See Oliver v. INS, 517 F.2d 426, 428 (2d Cir. 1975), cert. denied, 423 U.S. 1056 (1976) (explaining that an alien becomes a national only at birth, and "thereafter the road lies through naturalization, which leads to becoming a citizen and not merely a 'national.'"); Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 966 (9th Cir. 2003) (rejecting petitioner's claim that he is a "national" because he filed a naturalization application and holding that "in light of the historical meaning of 'national' and the text and context of § 1101(a)(22) . . . , under the INA, a person may become a national of the United States only through birth or naturalization.")  See also INA § 101 (a)(22); 8 U.S.C. § 1101(a)(22) (defining national); INA § 308, 8 U.S.C. § 1408 (establishing categories of noncitizens entitled to national status); and.INA § 318; 8 U.S.C. § 1429 (no application for naturalization shall be considered by the Attorney General if the alien is in removal

proceedings). Moreover, like the other claims raised in her amended petition, petitioner did not raise the nationality claim with the Immigration Judge or the Board of Immigration Appeals. She has therefore waived it. See Theodoropoulos v. INS, - - F.3d - - , 2004 WL 49118 (2d Cir. Jan. 12, 2004)(hereinafter Theodoropoulos II). In Theodoropoulos II, the Second Circuit reiterated its original conclusion that Theodoropoulos failed to exhaust his administrative remedies as statutorily required by INA § 242(d), 8 U.S.C. § 1252(d), by waiving his right to appeal the Immigration Judge's removal order to the Board of Immigration Appeals. 2004 WL 49118 at *1; see Theodoropoulos v. INS, 313 F.3d 732, 736-37 (2d Cir. 2002) (hereinafter Theodoropoulos I) (finding that district court lacked subject matter jurisdiction because habeas petitioner failed to comply with statutory exhaustion requirement of 8 U.S.C. § 1252(d), where he waived appeal of Immigration Judge's removal order). Consequently, the Second Circuit again determined "that Theodoropoulos's failure to exhaust his administrative remedies [as required by 8 U.S.C. § 1252(d)] deprived the district court of subject matter jurisdiction to entertain his habeas petition." 2004 WL 49118 at *5.

Importantly, the amended opinion by Chief Judge Walker makes clear that INA § 242(d), 8 U.S.C. § 1252(d), imposes a mandatory, statutory exhaustion requirement that applies even to habeas corpus petitions, not just direct petitions for review, despite doubts expressed in *dicta* by a later panel in Beharry v. Ashcroft.[2]  Theodoropoulos II, 2004 WL 49118 at **6-8. The

---

[2] See 329 F.3d 51, 60 (2d Cir. 2003) (noting that the panel in Theodoropoulos "treated § 242(d)(1), the successor provision to § 106(c) (at issue in Beharry), as a statutory exhaustion requirement when applied to a habeas petitioner, but the panel in that case did not discuss or consider the impact of *St. Cyr* on the applicability of § 242(d)(1) in the habeas context" and concluding that "it is *potentially* an open question whether the exhaustion requirement of § 106(c) applies in a habeas proceeding.") (emphasis added).

superseding decision in Theodoropoulos II further distinguished the clear statement rule of INS v. St. Cyr,[3] concluding that it does not apply where the issue does not involve the complete preclusion of judicial review. Theodoropoulos II, 2004 WL 49118 at **6-8.[4] Finally, the Second Circuit additionally concluded that no exception for constitutional claims or futility excuses the statutory exhaustion requirement. Id. at *9-10.

In the wake of Theodoropoulos II, there can be no doubt that the statutory exhaustion requirement of INA § 242(d), 8 U.S.C. § 1252(d), applies to petitioner Niver's habeas petition. In this case, there is no evidence that Niver raised the nationality issue at the administrative level. In fact, the record indicates that Niver conceded her alienage. Thus, as previously argued by respondent herein, Niver's failure to exhaust her administrative remedies, with respect to her nationality claim as well as the remaining claims set forth in her amended habeas petition, renders this Court without subject matter jurisdiction to consider these claims.

In any event, petitioner's claim to be a national of the United States is not properly before this Court. Section 242(b)(5), 8 U.S.C. § 1252(b)(5), vests exclusive jurisdiction over nationality claims in the Courts of Appeals. See Edwards v. INS, No. 03CV1509(JG), 2004 WL

---

[3] INS v. St. Cyr, 533 U.S. 289 (2001).

[4] In distinguishing St. Cyr, the court in Theodoropoulos II explained that the Supreme Court in that case

> signaled that it might not have construed the terms "review" and "judicial review" narrowly as applying only to direct review had the alternative reading not created a substantial constitutional concern:
> "If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252 [(a)(2)]. . . ."

2004 WL 49118 at *7 (quoting St. Cyr, 533 U.S. at 314).

315233, * 1-2 (E.D.N.Y. Feb. 17, 2004) (holding that district court did not have jurisdiction over nationality claim because under 8 U.S.C. 1252(b)(5), nationality claims must be reviewed in the Courts of Appeals; declining to transfer petition to Court of Appeals because it was not timely filed within thirty days of the BIA's decision).  See also Alvarez-Garcia v. INS, 234 F. Supp.2d 283, 289-90 (S.D.N.Y. 2002) (holding that "the sole and exclusive avenue for review of a claim of nationality is by direct petition for review to the United States Court of Appeals. . . ."); Marquez-Almanzar v. Ashcroft, 2003 WL 21283418 *3-5 (S.D.N.Y. June 3, 2003) (same; holding that the clear statement rule of St. Cyr, does not apply to 8 U.S.C. 1252(b)(5) because the statute, unlike that at issue in St. Cyr, does not involve a complete preclusion of review of petitioner's nationality claim) (citing Theodoropoulos I, supra).

      Petitioner has cited in her supplemental brief Lee v. Ashcroft, 216 F. Supp. 2d 51, 56-59 (E.D.N.Y. 2002) and Shittu v. Elwood, 204 F. Supp. 2d 876, 878-81 (E.D. Pa. 2002) for the proposition that this Court can determine petitioner's nationality claim on the merits, despite the jurisdictional limitations of 8 U.S.C. § 1252(b)(5).  However, the fact that those two cases decided the question without reference to Section 1252(b)(5) does not support this argument. In addition, in Lee, on respondent's motion to alter or amend the judgment, the district court reversed itself and held that it did not have jurisdiction over petitioner's nationality claims due to Section 1252(b)(5).  See Lee, 268 F. Supp. 2d 150, 151.  Subsequently, the district court, on petitioner Lee's motion for reconsideration, reversed itself again and reinstated its order of July 15, 2002.  The district court finally held that it has jurisdiction to consider the nationality claim on the merits, applying the clear statement rule of St. Cyr, because "§1252(b)(5) does not expressly repeal habeas corpus jurisdiction." See 2003 WL 21310247, *2-6 (E.D.N.Y. May 27,

2003). The district court's final opinion in Lee v. Ashcroft is incorrect and it should not be followed by this Court. See Salim v. Ashcroft, 350 F.3d 307 (3d Cir. 2003) (holding that alien did not become national by mere filing of naturalization application; and not finding Lee persuasive, where court "relied on petitioner's subjective allegiance to the United states, and did not engage in complete analysis of what it means to be a 'national' of the United States.'").

As the district court explained in Marquez-Almanzar, supra, various provisions of the INA provide for review other than habeas review in the district court and those provisions do not implicate the constitutional concerns underlying the clear statement rule. As an example, the court in Marquez-Almanzar cited the INA's statutory exhaustion requirement, § 242(d)(1), 8 U.S.C. § 1252(d)(1), requiring that a petitioner exhaust administrative remedies prior to bringing a habeas petition challenging a removal order. See Marquez-Almanzar, 2003 WL 21283418 *4-5 (citing Theodoropoulos I, supra). As the court explained:

> The exhaustion requirement is a jurisdictional rule, in that a court may not consider the merits of an unexhausted claim. *Theodoropoulos v. INS*, 313 F.3d 732, 740 (2d Cir.2002). It does not curtail the power of the courts to hear the petition, however, because the habeas remedy remains available, after the petitioner has exhausted his other avenues of relief. Thus, in *Sundar v. INS*, the Eleventh Circuit held that the clear statement rule did not apply to the statute requiring exhaustion of administrative remedies before federal courts "may review" a removal order. 328 F.3d 1320, 2003 WL 1948970, at *2 (11th Cir. Apr.25, 2003). Because the exhaustion requirement did not amount to a "complete preclusion of [habeas] jurisdiction," and therefore did not raise constitutional concerns by curtailing the availability of the habeas remedy, *St. Cyr* did not require a clear statement rule that the applied to habeas petitions. *Id.*
>
> *  *  *
>
> Like the exhaustion requirement, § 1252(b)(5) does not curtail the courts' power to review detentions in nationality cases. Rather, the statute simply specifies the procedure by which such petitions will be decided, dividing the labor between the Courts of Appeals and District Courts. The provision channels nationality petitions raising only questions of law to the Courts of Appeals, and petitions raising genuine issues of fact to

> the District Courts. 8 U. S.C. 1252(b)(5)(B). It does not remove an avenue of relief, or leave any class of petitioners without the ability to challenge the legality of their confinement, because it provides a forum for all petitioners raising nationality claims. *See Taniguchi* [v. Schultz], 303 F.3d [950] at 955 [9th Cir. 2002] (stating that 1252(b)(5) "does not foreclose completely the writ of habeas corpus"). Because the constitutional concerns underlying the clear statement rule are not implicated by § 1252(b)(5), there is no need to apply the clear statement rule to this provision.

Marquez-Almanzar, 2003 WL 21283418 *4-5. Indeed, as noted previously, the Second Circuit came to this very conclusion in its superseding opinion in Theodoropoulos II, 2004 WL 49118 (2d Cir. Jan. 12, 2004), finding that the statutory exhaustion provision of the INA applies to habeas petitions and does not raise the constitutional concerns present in St. Cyr. See Theodoropoulos II, 2004 WL 49118 at *7 ("If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252 [(a)(2)]. . . .")(quoting St. Cyr, 533 U.S. at 314). Accordingly, this Court does not have jurisdiction to decide the merits of petitioner's nationality claim and should decline to do so.[5]

## II.   Petitioner's Request For A Stay Of Removal Pending Her Collateral Attack On Her State Conviction Should Be Denied.

Although petitioner has filed a habeas petition in state court challenging her state convictions on various grounds, this does not change the finality of the convictions for removal purposes. See Montilla v. INS, 926 F.2d 162, 164 (2d Cir.1991) ("conviction is considered final

---

[5] Should the Court find that the amended petition relates back to the initial habeas petition filed herein, it could transfer the nationality question to the Court of Appeals for the Second Circuit, as it would be considered to have been timely filed since the BIA did not dismiss petitioner's appeal until after the habeas petition was filed. However, it is the respondent's position that the petitioner failed to exhaust the nationality issue and it is not therefore not reviewable by any court. See supra, at 2-3; see also Taniguchi v. Schultz, 303 F.3d 950, 955 (9th Cir. 2002) (affirming district court's dismissal of petitioner's citizenship claim for lack of jurisdiction under 1252(b)(5) and finding that the claim was not reviewable by the Court of Appeals because petitioner failed to raise to exhaust administrative remedies as to the claim).

and a basis for deportation when appellate review of the judgment--not including collateral attacks--has become final."). See also Johnson v. INS, No. 3:03CV96, 2003 WL 151381, *2 (D. Conn. Jan. 21, 2003) (Arterton, J.)(discussing finality of conviction for removal purposes even if under collateral attack); Plummer v. Ashcroft, 258 F. Supp. 2d 43, 45 (D. Conn. 2003) (same).[6] Since a collateral attack on a state conviction does not affect the finality of a removal order, there is no justification for a stay of the petitioner's removal pending such attack. See Agero v. McElroy, 901 F. Supp. 146, 147 (S.D.N.Y. 1995) (holding that the pendency of a collateral attack on petitioner's state conviction on which removal order is based does not justify the granting of a stay of removal).[7]

---

[6] In addition, the case law in this district and others makes clear that an immigration habeas petition under 28 U.S.C. § 2241 is not the appropriate vehicle for contesting petitioner's underlying state criminal convictions. See Johnson, 2003 WL 151381 at *2 (denying immigration habeas petition; holding alien cannot use § 2241 to collaterally challenge state conviction on which his removal order is based); Plummer, 258 F. Supp. 2d at 45 ("this § 2241 petition cannot be used to challenge [petitioner's] underlying state conviction); Pietre v. Bintz, 2003 WL 1562273 (N.D.N.Y. Mar. 25, 2003) (A habeas petition brought pursuant to 28 U.S.C. Sec. 2241 cannot be used to challenge the underlying state conviction); Drakes v. INS, 330 F.3d 600, 605-06 (3d Cir. 2003) (holding that collateral attack of state conviction that serves as predicate for removal order is not permitted under section 2241). See also Gomez-Deleon v. INS, No. 3:01cv1825, 2002 WL 1608331, *5-6 (D. Conn. 2002) (Droney, J.) ("this Court is not empowered to look behind a prisoner's conviction 'to review the factual innocence of a defendant who voluntarily plead guilty to the crime for which the defendant is being deported.'") (citing Lennon v. INS, 527 F.2d 187, 194 n. 16 (2d Cir. 1975) (other citations omitted)).

[7] While the Second Circuit granted a stay of removal in Arango-Aradondo v. INS, 13 F.3d 610, 614-15 (2d Cir. 1994), that case is distinguishable from the instant case. There, the alien had raised an ineffective assistance of counsel claim with respect to his representation in the underlying immigration proceedings. He had not raised this claim on appeal with the Board of Immigration Appeals and the court decided to enter a stay of removal to permit the alien to file a motion to reopen with the BIA to allow the agency to decide the in effective assistance claim in the first instance. Id. In other words, in Arango-Aradondo, the court stayed the alien's removal pending the reopening of the underlying removal proceedings. Unlike in that case, the

**Standard of Review for Stay of Removal**

If the Court finds that a stay of removal pending petitioner's state collateral attack may be warranted, despite the authority cited above, the Court should follow the standard of review adopted by the Second Circuit. The Second Circuit has held that the heightened standard under INA § 242(f)(2), codified at 8 U.S.C. § 1252(f)(2), enacted in IIRIRA, does not apply to a request for a temporary stay of removal pending appeal of the denial of an immigration habeas petition.[8]  See Mohammed v. Reno, 309 F.3d 95, 100, 103 (2d Cir. 2002) (vacating District Court's stay order under traditional injunctive relief analysis where petitioner had virtually no chance of success on the merits of his claim for 212(c) relief).[9]  Instead, the Second Circuit applies the traditional injunctive relief analysis in the context of a stay of removal.[10]

---

petitioner herein is challenging her state conviction via state habeas petition based on a claim of ineffective assistance of counsel in the criminal proceedings. As explained previously, the case law makes clear that such a state collateral attack does not change the finality of the conviction for removal purposes.

   [8]   INA § 242(f)(2), codified at 8 U.S.C. § 1252(f)(2), provides that "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence the entry or execution of such order is prohibited as a matter of law."

   [9]  In Mohammed, the Second Circuit reasoned that the word "stay" does not mean the same as "enjoin" as used in the statute, and thus Congress could not have intended for the heightened standard to apply to "stay" requests. See 309 F.3d at 99.  The Government disagrees with the Second Circuit's reasoning for the same reasons stated in Dorelien v. Ashcroft, 317 F.3d 1314, 1315-1320 (11th Cir. 2003) (Hull, J., concurring in denial of a rehearing *en banc*).

   [10]  There is a split in the circuits on this issue. See Kenyeres v. Ashcroft, 538 U.S. 1301 (2003) (Kennedy, J.) (vacating stay granted by Eleventh Circuit Court of Appeals, pending review of denial of asylum petition, because "applicant is unable to establish a reasonable likelihood that a reviewing court will be compelled to disagree with the decision of the BIA [denying asylum application]"; noting the split in the circuits on the standard of review but not deciding the issue of whether heightened stay standard under 8 U.S.C. § 1252(f)(2) applies because [a]pplicant is unlikely to prevail in his request for a stay under either of the standards

Under the traditional stay analysis, four criteria are relevant: "the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing the stay if one is issued, and the public interest." Mohammed, 309 F.3d at 100. The court in Mohammed followed the approach adopted by the District of Columbia Circuit in applying this standard: "The necessary 'level' or 'degree' of success will vary according to the court's assessment of other [stay] factors." Id. (quoting Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)(internal quotations omitted). The court further concluded that "the likelihood of success" factor in the context of a request for stay of removal "means something less than 50 percent." 309 F.3d at 102. In Mohammed, despite this threshold, the court vacated the stay entered by the district court finding that Mohammed had virtually no chance of success on his claim of eligibility for Section 212(c) relief.

In this case, even if the Court applies the traditional standard under pre-IIRIRA law, petitioner cannot satisfy that standard. As in Mohammed, based on the materials submitted this far, petitioner has virtually no chance of success on her state habeas claim. The transcripts of the plea colloquy on October 5, 1999, show that the state court advised petitioner "that conviction of these offenses could result in deportation, exclusion from admission to the United States, and/or denial of naturalization . . . ." See Petitioner's Supp. Memo, Tr. dated Oct. 5, 1999, at p. 11. She was likewise advised at her advisement of rights on June 7, 1999. See Id. Tr. dated June 7,

---

adopted by the Courts of Appeals.").

1999, at p. 1.[11]  See State v. Irala, 792 A.2d 109, 123-25 (Conn. App. 2002) (the rule providing for instruction on deportation consequences "seeks only to put defendants on notice that their resident status could be implicated by the plea."). In addition, as explained in the Government's previous response, the Vienna Convention does not create substantive rights for petitioner, so she is unlikely to prevail on any claim related thereto. See United States v. De La Pava, 268 F.3d 157, 164-165 (2d Cir. 2001) (declining to dismiss indictment on basis of Vienna Convention violation); and United States v. Jimenez-Nava, 243 F.3d 192 (5th Cir. 2001) (declining to suppress evidence on basis of Vienna Convention violation). As petitioner's state ineffective assistance claims primarily hinge on these two issues, she has virtually no chance of success. Accordingly, the stay should be denied.[12]

                                      Respectfully submitted,

                                      KEVIN J. O'CONNOR
                                      UNITED STATES ATTORNEY

                                      LISA E. PERKINS
                                      ASSISTANT UNITED STATES ATTORNEY
                                      450 MAIN STREET, ROOM 328
                                      HARTFORD, CT  06103
                                      (860) 947-1101
                                      FEDERAL BAR NO. ct23164

---

[11] The Government has not received any further information regarding her counsel's advice does not have any further information concerning

[12] Undersigned counsel is still exploring the possibility of an administrative stay pending petitioner's state collateral attack and would consent to entry of a stay pending consideration by the agency of such a stay request, provided the petitioner makes a formal administrative request supported by any further evidence she intends to submit in her collateral attack.

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the within and foregoing has been mailed, postage prepaid, this 19th day of March 2004, to:

David J. Wenc, Esq.
Waterside Office Park
44 Main Street
P.O. Box 306
Windsor Locks, CT 06096

                                                  LISA E. PERKINS
                                                  ASSISTANT UNITED STATES ATTORNEY