UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALICJA NIVER, | : | |
|     Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:02-cv-1786 (JCH) |
| v. | : | |
| | : | |
| IMMIGRATION AND | : | |
| NATURALIZATION SERVICE, | : | |
|     Respondent. | : | MAY 12, 2004 |

RULING RE:
AMENDED PETITION FOR
WRIT OF HABEAS CORPUS [Dkt. No. 24]

Petitioner Alicja Niver requests that this court grant her amended petition for the writ of habeas corpus [Dkt. No. 24] brought pursuant to 28 U.S.C. § 2241. In her petition, Niver presents a number of new claims which were not raised below. As a result of the petitioner's failure to exhaust her administrative remedies, among other reasons, the court finds that it lacks subject matter jurisdiction and dismisses the petition for a writ of habeas corpus.

I.     FACTS AND PROCEDURAL HISTORY

Forty-five-year-old petitioner Alicja Niver was born in Poland. She entered the United States as a visitor in July of 1979, but her status was adjusted to lawful permanent resident on April 16, 1980. On May of 1982, Niver married her husband, who is a citizen of the United States. The couple has no children. Niver's father, as well all of her siblings

and their children, are U.S. citizens who live in this country, although her mother, like Niver herself, is a legal permanent resident. Niver petitioned for naturalization twice, once in June of 1979 and again in August of 1998. On both applications for citizenship, Niver answered affirmatively with respect to questions concerning her allegiance to the United States. See Petitioner's Second Reply to Response to Amended Petition, at 7-8 [Dkt. No. 33].

On December 3, 1999, Niver pled guilty to and was convicted of third degree robbery in violation of Connecticut General Statutes § 53a-136 and third degree larceny in violation of Conn. Gen. Stats. § 53a-124. Niver was sentenced to five years' imprisonment on each count, the first suspended after three years and the second completely suspended and to run consecutive to the first, with five years of probation to follow.

Based on these convictions, on February 5, 2001, the INS initiated removal proceedings against Niver. The Notice to Appear alleged that she was subject to removal pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA" or "the Act")[1] as an aggravated felon, specifically, for having committed both a "crime of violence" for which the term of imprisonment is at least a year under § 101(a)(43)(F) and a "theft offense" for which the term of imprisonment is at least a year under § 101(a)(43)(G).

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii).

In an Order dated April 29, 2002, an immigration judge ("IJ"), noting that Niver had not made any application for relief from removal, concluded that Niver was removable based "on the charge(s) outlined in the Notice Appear," and he ordered her removed to Poland. See Response to Petition for Writ of Habeas Corpus ("First Response") [Dkt. 9], Ex. A-4: Order of the IJ.

Niver timely appealed this Order to the Board of Immigration Appeals ("BIA") on May 16, 2002. While her BIA appeal was pending, on October 9, 2002, Niver filed the instant petition for habeas corpus in federal district court; she "simultaneously" filed a state habeas petition challenging the underlying convictions. Amended Petition for Writ of Habeas Corpus, at 6 [Dkt. 24]. In an Order dated December 18, 2002, the BIA dismissed Niver's appeal, describing her state convictions that resulted in concurrent five-year sentences of imprisonment and noting that she had conceded removability before the IJ. See Notice of Intent to Execute Removal [Dkt. 15], Ex. A-6, at 2: BIA Order. Although Niver completed her state sentence of imprisonment in June of 2002, she remains in federal custody as a result of an INS detainer.

## II.  DISCUSSION

### A.  Background

In her petition, Niver raises for the first time three general claims.[2]  First, she claims that she is not subject to removal as an "alien" "convicted of an aggravated felony" because she is a "national of the United States," compare 8 U.S.C. § 1227(a)(2)(A)(iii)("Any alien who is convicted of an aggravated felony at any time after admission is deportable.") with 8 U.S.C.S. § 1101(a)(3)("The term 'alien' means any person not a citizen or national of the United States.") and 8 U.S.C. § 1101(a)(22)(defining "national of the United States" as a citizen of the United States, or a person who, though not a citizen of the United States, owes permanent allegiance to the United States).[3]  Specifically, Niver suggests that her two applications for citizenship, together with long time residency, employment, and her familial ties in this country, suffice to qualify her as a "national" rather than an alien.

Second, Niver argues that her removal would violate various international laws, such as the International Covenant on Civil Rights and Political Rights (ICCPR), the Universal Declaration of Human Rights (UDHR), and the Convention on the Rights of Children

---

[2]  In her original petition [Dkt. No. 1], which was filed pro se, Niver challenged her conditions of confinement.  Because Niver's amended petition [Dkt. No. 24], which she filed with the assistance of an attorney, does not raise this claim, the court will not address it.

[3]  Section 1101(a)(22) of Title 8 of the United States Code reads in full: "The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."

(CRC). She argues that she deserves a full and fair hearing on why her deportation would violate international law.

Third, Niver seeks to overturn her underlying state criminal convictions based on various claims. She contends that the Government's failure to comply with the consular notification provision of the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (ratified Nov. 24, 1969)("VCCR"), requires the reversal of her conviction and, additionally, that her counsel's failure to raise this claim constitutes ineffective assistance. Niver also claims that her guilty plea was not a knowing, voluntary, and intelligent waiver because she was not made aware of the collateral immigration consequences of such a plea. She further contends that her counsel's failure to inform her of these consequences constituted ineffective assistance of counsel.

The government responds that, based on exhaustion principles, this court lacks jurisdiction to hear any of the claims Niver presses here because she failed to raise them below. See Government's Response to Amended Petition for Writ of Habeas Corpus ("Amended Response") [Dkt. No. 28]. The government argues further that, even if the court were to reach Niver's claim to be a "national of the United States" and her international law claims, it should reject them as without merit. With respect to Niver's challenges to her underlying state convictions, which are also pending in a state habeas petition, the government argues that the court must also reject these claims as not final. As

elaborated below, the court denies the petition for substantially these reasons.

**B.     Failure to Exhaust**

In general, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." Howell v. INS, 72 F.3d 288, 291 (2d Cir. 1995). The requirement of administrative exhaustion can be either statutorily or judicially imposed. See Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003). "This Court has explained that the distinction between the two exhaustion requirements can be 'pivotal' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." Id. (internal citation omitted).

The explicit statutory language requiring exhaustion of agency remedies before appeal of an immigration judge's decision to the federal district court appears in INA § 242(d)(1). See 8 U.S.C. § 1252(d)(1)(successor provision to INA § 106(c), which was formerly codified at 8 U.S.C. § 1105a(c). Under this provision, "[a] court may review a final order of removal only if -- (1) the alien has exhausted all administrative remedies available to the alien as of right . . . ." Id.

After careful examination of the relevant statutory language, the Second Circuit in Beharry v. Ashcroft, 329 F.3d 51 (2d Cir. 2003), suggested in dicta that the question of whether the INA's statutory exhaustion requirement applies to habeas petitions remains

open. See 329 F.3d at 61-63 ("We do not and need not decide whether § 106(c) imposes a statutory exhaustion requirement on habeas petitioners like Beharry, because Beharry's failure to raise his § 212(h) claim below cannot be excused whether the exhaustion requirement is statutorily or judicially imposed."). In fact, in Theodoropoulos v. INS, a decision issued only a month and a half before Beharry was argued, the Second Circuit applied § 242(d)(1)'s statutory exhaustion requirement to the habeas petition before it and held that the petitioner's failure to exhaust on statutory grounds deprived the court of subject matter jurisdiction. See Theodoropoulos, 313 F.3d 732, 736-37 (2d. Cir. 2002) ("Theodoropoulos I").

Apparently, in light of this questioning of its holding in Beharry, the panel in Theodoropoulos issued an superseding opinion unambiguously holding that § 1252(d)(1) creates a statutory exhaustion requirement in "all forms of review including habeas corpus."[4] See Theodoropoulos v. INS, 358 F.3d 162, 171 (2nd Cir. 2004) ("Theodoropoulos II"). The court in Theodoropoulos II stated further that, in so holding, it "join[ed] those circuits

---

[4] The history of the Theodoropoulos opinion is notable. The original opinion was issued on Dec. 18, 2002 but was amended on Dec. 20, 2002. On February 6, 2003, the petition for rehearing en banc was submitted, an event noted in the Beharry decision. See Beharry, 329 F.3d at 58 n.12 (describing Theodoropoulos I as a case in which the mandate had not yet issued and noting that a "petition for rehearing is sub judice at present"). In June of 2003, in light of the pending petition for rehearing, the court asked that counsel for Theodoropoulos be appointed and that the parties submit additional briefs to the court. On August 12, 2003, the Honorable Fred I. Parker, principal author of the original and first amended opinions, Theodoropoulos I, died. Ultimately, on January 12, 2004, a superseding opinion, Theodoropoulos II, was issued.

that have specifically decided that issue, which have been unanimous in holding that the exhaustion requirement applies in the context of habeas corpus proceedings." Id. (citing cases).

In any event, whether or not there exist "limited circumstances in which an exception to the general rule [of exhaustion] might apply," Theodoropoulos II, at 173, the court concludes that Niver's failure to exhaust cannot be excused, even under this "less stringent judicial exhaustion requirement." Beharry, 329 F.3d at 62. According to the Second Circuit in Beharry:

> If an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies. Specifically, exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.

Id. at 62 (quotation marks omitted).

Because the court does not find a basis here for applying any of these exceptions, Niver's failure to exhaust her claims should not be excused as a matter of judicial discretion. Thus, this court concludes that general exhaustion principles apply both to Niver's international law claims and to any application for relief from removal she might have brought based on these claims. See De La Teja v. United States, 321 F.3d 1357, 1366 n.5 (11th Cir. 2003)("The government argues that we do not have habeas jurisdiction over

this claim because the Convention Against Torture is a non-self-executing treaty, and under its implementing legislation any jurisdiction resides exclusively in the Court of Appeals on direct petition for review after the issuance of a final removal order. We have no occasion to address that argument here, because we find that De La Teja has failed to exhaust his administrative remedies."); Perez v. Ashcroft, No. 02 Civ. 10292, 2003 U.S. Dist. LEXIS 14672, *11-16 (dismissing habeas raising ICCPR and other international law claims for failure to exhaust); cf. Jean v. Nelson, 727 F.2d 957, 980-81(11th Cir. 1984)(stressing narrowness of that holding § 1105a(b)'s exhaustion requirement does not apply "when there are no further administrative remedies to pursue").[5]  These exhaustion principles also apply as to Niver's claims of ineffective assistance of counsel.  See, e.g., Arango-Aradondo v. INS, 13 F.3d 610, 613-14 (2d Cir. 1994)(declining to consider constitutional ineffective assistance of counsel claim that was not raised before the BIA but granting stay of deportation to allow petitioner to do so); Goonsuan v. Ashcroft, 252 F.3d 383, 386 (5th Cir. 2001)("We further conclude that while generally a motion to reopen is not required to exhaust administrative remedies under § 106(c), Goonsuwan's failure to raise his ineffective

---

[5] The court also notes that, on the merits, Niver's treaty claim does not have a basis in current case law.  "The government's failure to comply with the consular-notification provision of the Vienna Treaty is not grounds for dismissal of a criminal indictment." United States v. Bustos de la Pava, 268 F.3d 157, 165 (2d Cir. 2001); see generally Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1994)("Although compliance with our treaty obligations [under the VCCR, for example,] clearly is required, we decline to equate such a provision with fundamental rights, such as the right to counsel, which traces its origins to concepts of due process.").

assistance of counsel claim before the BIA deprived the district court of jurisdiction to consider the issue in Goonsuwan's petition for habeas corpus."); see also generally Briones-Sanchez v. Heinauer, 319 F.3d 324, 327-28 & n.2 (discussing in dicta administrative procedures through which aliens must raise claims such as ineffective assistance before filing habeas petition).

      Moreover, the various challenges Niver raises with respect to her underlying state convictions should be pursued in the context of her state habeas petition rather by means of the instant § 2241 petition. See Contreras v. Schiltgen, 122 F.3d 30 (9th Cir. 1997)(alien could not collaterally attack state court conviction in habeas corpus proceeding against the INS because the validity of the conviction could only be tested in an action against the state and INS was entitled to rely on conviction as basis for custody and eventual deportation until alien had successfully overturned his conviction in such a proceeding); Johnson v. INS, No. 3:03cv96, 2003 U.S. Dist. LEXIS 705, 2003 WL 151381(D. Conn. Jan. 21, 2003)(Arterton, J.)(alien petitioner could not use 28 U.S.C. § 2241 to collaterally challenge his state court conviction); Pietre v. Bintz, No. 9:01-CV-0260, 2003 U.S. Dist. LEXIS 4453, 2003 WL 1562273 (N.D.N.Y. Mar. 25, 2003) (same); Plummer v. Ashcroft, 258 F. Supp. 2d 43, 46 (D. Conn. 2003)(Arterton, J.) (for same proposition, citing cases such as Montilla v. INS, 926 F.2d 162, 164 (2d Cir. 1991) and Marino v. INS, 537 F.2d 686, 691-692 (2d Cir. 1976)).  Thus, the court is without jurisdiction to review Niver's

unexhausted claims and therefore dismisses the petition.

    **C.**    **Nationality Claim**

Notwithstanding the previous discussion, the court recognizes that 8 U.S.C. § 1252(b)(5) treats nationality claims as somewhat distinct. Thus, even if exhaustion principles do not apply to nationality claims, an issue which this court does not reach, the court concludes that the court of appeals, rather than the district court, is the appropriate forum to adjudicate such claims.

Niver asks this court to decide her claim to be a "national" within the meaning of 8 U.S.C. § 1227. However, subsection 1252(b)(5) of chapter 8 of the United States Code, which is entitled "Treatment of nationality claims," reads in relevant part:

> (A) Court determination if no issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.
>
> (B) Transfer if issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28, United States Code.

Although 8 U.S.C. § 1252(b)(5)(A) is not without ambiguity, courts have consistently interpreted this provision as requiring the court of appeals, rather than the district court, to

decide whether the petitioner's status is indeed that of alien where there is no factual dispute, as is the case here.  See Hughes v. Ashcroft, 255 F.3d 752, 755 (9th Cir. 2001); Rodriguez v. Ashcroft, No. 02 Civ. 1188, 2003 U.S. Dist. LEXIS 23, *12 (S.D.N.Y. Jan. 6, 2003)("Courts . . . have uniformly concluded that review of nationality claims in the context of removal orders must occur in the first instance in the courts of appeals. . . . 'District courts do not have jurisdiction over nationality claims.'")(citations omitted); see also Taniguchi v. Schultz, 303 F.3d 950, 956 (9th Cir. 2002)("If an alien in a removal proceeding is ordered removed, but contends that she is a United States citizen, § 1252(b)(5) is the exclusive statutory method of determining the claim of citizenship, and it is brought as a petition for review of a final order of removal.")(emphasis added).  Thus, even had Niver properly exhausted her nationality claim (or no exhaustion was required), this court would have been forced to dismiss the claim for lack of jurisdiction under 8 U.S.C. § 1252(b)(5)(A).[6]

---

[6] However, with respect to the merits of Niver's nationality claim, an issue which this court does not reach, it should be noted that the claim seems to be foreclosed by case law in this and other circuits.  See Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 965 (9th Cir. 2003)("We hold that the filing of an application for naturalization does not change an applicant's immigration status from that of an alien to that of a national because, under the [INA], a person may become a 'national of the United States' only through birth or naturalization."); cf. Oliver v. INS, 517 F.2d 426, 427-28 (2d Cir. 1975)("Rather, Mrs. Oliver owes allegiance to Canada; apparently because of neglect rather than deliberate intention, she has not chosen 'to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen,' as § 337(a)(2) requires for naturalization.  Chapter 1 of Title III indicates that, with a few exceptions not here pertinent, one can satisfy § 101(a)(22)(B) only at birth; thereafter the road lies through naturalization, which leads to

If petitioner had timely filed an exhausted, nationality claim in this court, she could request transfer to the Second Circuit, thus avoiding dismissal. Without reaching the question of whether her amended petition relates back to her original petition, the court declines to transfer this claim. In light of petitioner's failure to exhaust, the claim is not reviewable by any court. See discussion, supra at 6-10; see also Taniguchi v. Schultz, 303 F.3d 950, 955 (9th Cir. 2002).

### D.   Request for Continued Stay

This court has stayed petitioner's removal in order to address her claims. She now requests a stay pending a decision on her state habeas corpus petition attaching her criminal convictions. In the Second Circuit, the traditional injunctive relief analysis is applied in the context of a stay of removal.[7] Under this traditional stay analysis, four criterial are relevant:

---

becoming a citizen and not merely a 'national.'"); United States v. Sotelo, 109 F.3d 1446, 1448 (9th Cir. 1997)("Although we have not definitively defined the term national, we have suggested a person attains national status primarily through birth."); see also Miller v. Albright, 523 U.S. 420, 467 n.2 (1998)(Ginsburg, J., dissenting) ("Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen. 8 U.S.C. § 1101(a)(22). The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island.")(citation omitted); see generally Hughes, 255 F.3d at 757 (9th Cir. 2001)("[I]n order for a person who is born outside the United States to qualify for 'national' status, the person must, at a minimum, demonstrate (1) birth in a United States territory or (2) an application for United States citizenship. Because Petitioner does not meet either of those minimal requirements, we need not delineate what additional facts (if any) he would have to show.").

[7]   The Second Circuit has held that the heightened standard under INA § 242(f)(2), codified at 8 U.S.C. § 1252(f)(2), enacted in IIRIRA, does not apply to a request for a temporary stay or removal pending appeal of the denial of an immigration habeas petition.

"the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing the stay if one is issued, and the public interest." Mohammed v. Reno, 309 F.3d, 100, 103 (2nd Cir. 2002).

Petitioner cannot satisfy this standard. Based on the record before the court, petitioner has virtually no likelihood of success on her state habeas claim. The transcripts of the plea colloquy on October 5, 1999, reveal that the state court advised her "that conviction of these offenses could result in deportation, exclusion from admission to the United States, and/or denial of naturalization . . . ." See Petitioner's Supp. Memo. (Dkt. No. 39), Tran. (Oct. 5, 1999) at p.11. She was likewise advised at her presentment on June 7, 1999. See id. Tran. (June 7, 1999) at p.1. See State v. Irala, 792 A.2d 109, 123-25 (Conn. App. 2002) (the rule providing for instruction on deportation consequences "seeks only to put defendants on notice that their resident status could be implicated by the plea.") Further, this court sees little likelihood of success for the petitioner by way of reversal of its finding of failure to exhaust and then prevailing on the merits of her treaty or nationality claim.

### III.   CONCLUSION

For the aforementioned reasons, the petitioner's amended petition for a grant of the writ of habeas corpus [Dkt. No. 24] is denied. The stay of removal entered by the court on March 6, 2003 [Dkt. No. 19] is vacated. Request for transfer to the Second Circuit and

further stay are both denied.  The clerk is directed to close the case.

**SO ORDERED.**

    Dated at Bridgeport, Connecticut this 12th day of May, 2004.


                    /s/ Janet C. Hall
                    Janet C. Hall
                    United States District Court